Department of Public Safety. Okay, Mr. Feldman. Thank you. Good morning, Your Honors. It may have pleased the Court. My name is Brian Feldman from Harder Seacrest in Emory, representing the appellant Wacob Leasing on this appeal. This morning, Your Honors, I'd like to focus on the $8 million question in our appeal, which is the damages question and the question of replacement costs. If you'll indulge me in some math metaphors, I think math terminology is a useful way of three points, starting with the mathematical equation, which we'll concede is the before and after test. Second, I'd like to talk about what the before variable in that test represents. And then third, and not to bury the lead, talk about how replacement costs should inform the value of that variable. So to start at the top, the equation here is not something that is disputed at this point between the parties. The appellant is prepared to concede that the before and after test is the mathematical equation by which damages should be measured. Why do we concede that? That is the rule in Mississippi. That is the rule under the Restatement Second of Torts in Section 928. That is the rule in the Admiralty cases, including Kingfisher, that we cite in our brief. There's no disagreement then about what the math is. It's the value beforehand minus the value afterwards. There's also no dispute about what that second number is, the after value, as found by the jury, was $2.7 million, and that's not contested on appeal. All that remains in dispute on this appeal and at trial below was the first value. And in that regard, this case and this appeal is much like the appeal this Court heard in factory mutual insurance back in 2013, and that's cited in our 28J letter earlier this week. In factory mutual as here, there was no dispute what the mathematical equation was. There was no dispute what the after value was. The only dispute between the parties was how to value the before value. And I choose that case because ultimately this Court, sitting in diversity, applying Texas tort law, applied what we say should have been applied below the replacement cost test. So to turn to the second question, what is the before variable? It's a mathematical question. I'll give you a lawyerly answer, which is it depends. But here it depends on a jury finding that they weren't allowed to make. And the answer is that if the jury was convinced that Wackham Leasing had a legitimate need for a 10-seat Cessna, that was the plane that was custom-made and destroyed. Ten as opposed to the usual eight, was it? That's exactly correct, Your Honor. Ten as opposed to the usual eight. Then the before value must be set, the before variable must be set at the value to Wackham or some other business entity who likewise had a legitimate need for a 10-seat Cessna. The reasons that Wackham Leasing needed a 10-seat Cessna are laid out in the Derek Wackham Declaration at 1105 of the record in paragraph 6. And the reason that this is the test is this is the test applied in Mississippi and in the common law. If you go back to the Mississippi Supreme Court case of 1917, it involved a very nice dog that was run over by a train. And the trial court awarded the nominal value of a dog, but it was a blue-blooded hunting dog. And when the Mississippi Supreme Court reversed, it said, you applied the wrong test. The question is, quote, how much a man who wanted to buy a dog like this one would pay? And that's the same question here. How much somebody who would want a 10-seated Cessna would pay for it? That rule is reflected in section 911 of the Restatement Second of Torts, which provides that actual value should apply in cases of items with unique attributes. And section 911 of the Restatement is what Your Honor applied in, and this Court applied in, Kingfisher Marine, a case the parties talk a lot about in their briefs and argued below. Kingfisher Marine is an admiralty case, but one that held that if there was a legitimate commercial need for a feature on the vessel, that the vessel should be valued from the standpoint of someone who shared a legitimate need for that attribute. And we know from the panel denial of rehearing that section 911 of the Restatement is the test, is the common law test that this Court applied in Kingfisher Marine, because it said so, and that's at 729 F. 2nd. 315, this Court said it was applying the section 911 test of the Restatement. That's footnote 1. The same test was applied in E.I. DuPont, and both of those cases rely on what this Court has called the seminal case, which is the President Madison case out of the Ninth Circuit from 1937, which talked in great detail about this test. And it said there that the value question is not, quote, whether the lost vessel could have been used in other services, right? Not whether there's a market for Cessnas, of course there is. But the value question was, quote, whether the item could be purchased in an open market to replace the lost vessel. In other words, whether you could find a 10-seat Cessna, and how much that would be valued to someone with a legitimate commercial need. Now, we'll concede there are some limitations on this actual value standard. There are three. One is that it can't be speculative. Another is that it cannot be sentimental. And the third, coming from the Kingfisher case, is that there must be a legitimate commercial need. One, the reason we know this is for the finder of fact is from the denial of rehearing of Kingfisher, where this Court said that if the plaintiff can convince the finder of fact that its value to him was real and not speculative or later derived, he should recover it. So that was a question that should have gone to the jury. There was sufficient evidence at summary judgment for that question to go to the jury. So then the last question, which gets us to replacement cost, is how to calculate the before variable. That's the question the jury should have been able to decide, and the jury should have used the jury instruction that Wacke proffered, which is the common law test. The common law test for calculating value is as follows. If there is a market price for the item with its feature, then the market price governs. If there is not a market price, because there aren't pre-owned 10-seat Cessnas on the market, and there weren't, then the jury should be able to consider replacement costs. That's the rule at Section 911 of the Second Restatement on Torts. It's also the rule that was aptly described by this Court back in 2013 in the factory mutual insurance case. And I'll read from that case, because in factory mutual, this Court wasn't applying amnesty law. It was applying tort law. It was a negligence case. This Court was sitting in diversity, applying Texas state law, which as far as I can tell is no different than Mississippi state law, and this Court said the test was as follows. If a market exists, then comparable sales are the usual measure. If a market does not exist, however, then replacement cost is the appropriate measure. That is what the Mississippi model jury instruction on page 42 of our brief says as well. If there's a market value, the jury can award the market value. If there's no market for the aircraft with the particular seating configuration and there wasn't, then the jury can consider replacement costs. This common law rule is reflected in the Mississippi cases that are cited throughout the briefs in Stewart, in Bell, in Austin. And there are a couple other Mississippi cases that lead guidance here to the same result of using replacement costs. There was a Mississippi case from 1945, the Sears-Robuck case, which specifically reserves replacement costs as, quote, something that may be used in an appropriate case as an aid in computing value, which is what we're asking for here and reflected in the Mississippi model jury instruction. As well, there's a case called Thomas v. Global Boat Builders cited in the briefs from, I believe, the Mississippi Supreme Court. And why Thomas v. Global Boat Builders is important is that in that case, the Mississippi Supreme Court block quotes the restatement, Section 928, which is the restatements before and after test. And it block quotes it and says these are the rules in Mississippi, and that block quote includes the term value, which under Section 928 of the second restatement is defined by a value definition, would allow a fact finder to look to replacement costs. Terrific illustrations of how this applies are the various illustrations with watercraft. We're talking about an aircraft, a unique Cessna with a 10-seat configuration. There aren't a lot of cases we can see about aircraft in this context, but there are a lot in admiralty. And as we know from the Kingfisher case, the admiralty test is no different than the common law test applied in the state courts. The Sawyer Brothers case was the case of our 28-J letter earlier this week. It's useful because in that case, a 1987 Mack truck with a special configuration was lost overboard. That's why it's an admiralty case. It's a First Circuit case. And it was replaced with a 2014 truck, a much better, much newer truck with the same configuration. The court affirmed the award of replacement costs. So they went from a 1987 model to a 2014 model. That's much further than the 2007 Cessna, our client lost, to the 2014 replacement. DuPont and Kingfisher, likewise, are cases where the lost vessel had a unique feature that wasn't available on the market, and a replacement cost award was affirmed by this court. Same with the President Madison case I cited out of the Ninth Circuit, which is really the seminal case. In that case, there was a boat that was specifically designed to sail, I believe it was the, it may have been the Columbia River, but a river in the Pacific Northwest that had a particular depth that was of particular use and value to the owner. And when that was lost, the court said replacement cost was the appropriate award. Another case I don't believe we cited but which is useful is the Margate shipping case out of this court from 1998. That's 143 F. 3rd 976. And what's useful to see in the Margate shipping case is the government's taking the opposite position there. In the Margate shipping case, it was the government, the United States of America, that asked the court to use replacement cost to value the lost item. In all of these cases, the fact pattern is almost exactly the same as the fact pattern here in the following way. In the cases, the fact pattern is an allegation that a particular piece of property had unique attributes that had legitimate commercial value to its owner, that that was destroyed or lost, and that the owner then went on to the marketplace to see if he could find he or she or it could find something of equivalent value and couldn't. Those are precisely the facts that were before the court below its summary judgment, which the jury never heard. And this is in the — When you run out of time, are you going to address your problem with the 80-20 stipulations? With the 80-20 stipulation, yes, Your Honor. Three problems. It wasn't a stipulation. The — removing this question from the jury violated Wacob's rights, and the objection was preserved. To start with, it wasn't a stipulation. Stipulation is where one side of the v asserts a fact and the other side agrees with it. Right? That's a stipulation. This was a joint defense contention. They contended that Millionaire had 20 percent liability and that the United States had 80 percent. My client disagreed. That is usually resolved through a trial. Yes, Your Honor. What difference does it make to you? Is it the imposition of interest? Well, it's the fundamental reason — Is it the government's right to pay interest? I'm sorry, Your Honor. Is it the fact that the government is not required to pay interest? Is that what bothers you about the 80-20? That's one of the problems, but it's more fundamental than that, Your Honor. The — the interest here is a fundamental interest in going to court. When a civil litigant brings a lawsuit, their goal against each defendant is to get a judgment, a money judgment, with the highest number on it possible. We were deprived of that opportunity with Millionaire. Instead of having the full damages amount or as nearest to it on a money judgment against Millionaire, our client had it reduced to merely 20 percent of the judgment. That is — that is the core of civil litigation. There are also real-life prejudicial effects, which is collecting that sum versus the United States is going to be a different and much harder endeavor than against a private entity. We can't send the sheriff out to collect against the United States. There needs to be a congressional appropriation for the United States to pay us. There's also no post-judgment interest against the United States of America where there would be against — against another litigant. This violated the jury rights as briefed in the papers under the Seventh Amendment. We brought up the Seventh Amendment right before trial at page 2049 of the Record on Appeal. And their argument about preservation is erroneous for two reasons. First, it assumes that the — the plaintiff had to take a defense contention and — and give up on that point before — before — before trial with — unless the plaintiff articulated some prejudice. That's not the way it works. In a pretrial order, there's a section of stipulations that the jury gets to hear about what the parties agree, and then there's sections about contentions. And the plaintiff never has to agree to those contentions. That's their right not to agree to it. They get a trial on that. Secondly, even if you were to accept the government and the defendant's argument that there — they had to articulate prejudice, we did at the right time. The very first time that the defendants asked for separate judgments, not a joint judgment, but separate judgments that we had to collect against separately, was after trial in a motion to amend the judgment in April of 2017. And at that point in time, my client articulated the post-judgment interest problem and the collection problem. And we did it at that point in time because — What did the final pretrial order say in regard to what was a contention and what was a stipulation on this point? What did the district court say with respect to — What did the final pretrial order say? In the final pretrial order, which is filed in the record, the plaintiff wrote over and over again its objection to these contentions. So in that — in plaintiff's contentions, we took the opposite position on allocation, as you would expect from the defendants, Your Honor. So there was no joint and several liability finding? There was no joint and several liability finding. That's correct. I see my time has expired. I have reserved four minutes. Yes, you've saved time for rebuttal. Thank you, Your Honors. Thank you, Mr. Feldman. Mr. Dempsey. May it please the Court, Ashley Dempsey, for — Excuse me. Ms. Dempsey, excuse me. That's perfectly all right, Your Honor. Ashley Dempsey for the United States of America, APALE. I'm going to be addressing the measure of damages today, and counsel for Gulfport Aviation Partners will be addressing the issue on the stipulations, since the main issue there is regard to the jury trial, and there's no jury trial against the United States. However, should the Court have any questions for me on that issue, I'm happy to answer them. Thank you. In regard to the measure of damages in Mississippi, the district court got it right. The motion for partial summary judgment solely related to the claim for full replacement cost in the complaint, and that was what was being addressed by the court. The issue seems to be reframed by Waco on appeal as far as evidence that should have been considered by the jury or that it is an element of damages that could be in the jury instruction. However, in the complaint, in the motion for summary judgment, and the issue before the district court was whether Waco could recover full replacement value as it claimed in its complaint, and that's what the court was addressing in the motion for partial summary judgment. And Mississippi law, which is applicable here, not admiralty law or something else, has been very clear for very long that where you have property that has a fair market value, the measure of damages is the before and after rule. And there's no dispute about that. Mr. Feldman contends that there was no market for this, so you can't really determine. That's interesting, and that's new. Many, many months before the filing of the motion for partial summary judgment, Waco disclosed an expert in aircraft appraisal. He performed a market approach appraisal where he looked at the market for assessment citation sovereigns. He didn't add any value or take off any value to the aircraft based on the number of seats. He came up with a fair market value of $8.5 million. He — that's in the United States brief where we take some citations from that expert, Mr. DuFour, from his report. In fact, he stated his opinion of market value considered the aircraft's highest and best use. And so the declaration of Mr. Waco submitted in opposition to the motion for partial summary judgment really only established that Waco had a business need for this type of aircraft. It didn't establish, and there was no evidence that others would not also use the aircraft  to the contrary. Again, the expert used to value it. It wasn't a prize hunting dog. I'm sorry, Your Honor. It wasn't a prize hunting dog, which is not replaceable. It was not a prize hunting dog. So getting back to Mississippi law, the policy behind the before and after rule is so that the plaintiff will be made fully whole, as is the goal in any tort case, as well that the owner of the property, again, the plaintiff should not be unjustly enriched or profit from the measure of damages imposed in a case. As we've discussed in the brief here, the $8 million question, Waco would be placed in a position $8 million greater by an award of full replacement cost in this case. The most recent Mississippi Supreme Court case to talk about the policies behind that is the Ballard case, and I'll just point out that, again, Mississippi Supreme Court says that the before and after rule is a proper measure of damages where property has a fair market value. This aircraft had a fair market value. There is an exception to the rule. It is for household goods and personal effects. State Stove, the opinion from the Mississippi Supreme Court from 1966, discusses that exception, and it is sort of outlined in the jury instruction number 1132, which was discussed earlier as well. The title of that jury instruction, however, is property having no market value, and then it goes into the factors that would be considered by a jury in placing a value upon property that has no market value. Going back to the case of the blue-budded hunting dog, courts long ago were faced with a dilemma when someone had property that didn't have a market value, and yet the court realized this party is entitled to some compensation for its loss, and that's where the exception came from for the household goods and personal effects. These are items such as the painting, the famous, you know, family painting, grandmother's diaries, the artificial eye example from the restatement. That's simply not what is before the court in this case or what was before the district court. We have a commercial aircraft that was appraised at $8.5 million using a market value approach. There's no evidence that there was no market for this. And again, that's the policy at issue in the Admiralty cases where the deviation from the general rule of market value, the courts say that's appropriate where there just simply isn't a market to value the unique casino barge or the barge that's been modified to carry a certain amount of cargo, and that may not be worth a dime on the market, but it's worth a lot to its owner, and the courts came up with ways of valuing it. It's generally the value to the plaintiff, to the owner rather, or there's some depreciation if the court's going to look at replacement cost. There's not a single case that allows full replacement cost without some offset for depreciation or betterment. But again, Admiralty law is just, it's not Mississippi law, and this court should apply Mississippi law in this Federal Tort Claims Act case. Even the restatement discusses how to make that deduction for depreciation. Waco never asked for that below. They merely asked for full replacement cost with no offset, and the district court properly denied that claim in the motion for partial summary judgment. The court should not extend Mississippi law beyond its present boundaries, and so the district court's order granting partial summary judgment. And again, as to the second issue on the stipulation and the appropriateness of that, that court order should also be upheld. Thank you, Your Honors. All right. Thank you, Ms. Dempsey. Mr. Emmons? May I proceed, Your Honor? Thank you, and good morning. And Ms. Dempsey probably said this a lot more eloquently than I will. This aircraft was not on a boat, and it wasn't in Texas, okay? So we apply Mississippi law. This aircraft was on a tarmac in Gulfport, Mississippi. She addressed the before and after rule, and I clearly don't see how the appellate can argue to you in good faith that they replace a 2007 aircraft with roughly 1,400 hours on it with a brand-new 2014 Cessna Citation 687. You don't need to attack their good faith. They have a legitimate argument made to this court, and we'll consider it carefully. I understand that, Your Honor. But I guess my specific issue here would be to address the stipulation. I submit to the court that there definitely was a stipulation made, and Judge Higginbotham, you asked a question. I'll read from the pretrial order that was entered in this matter, which we supplemented. It says, Walkup acknowledges that the court has granted a motion precluding Walkup's recovery of prejudgment interest. Walkup contests the ruling and maintains that a trial on the liability issues is necessary to determine its entitlement to prejudgment interest. And Judge Clement, I think that was a question to you. That's exactly how they're attacking the stipulation. The government doesn't pay prejudgment or doesn't pay post-judgment interest. Pay any interest. Yes, ma'am, post-judgment interest. And these are all new issues. These are all new theories that came up after the court ruled on our motion for partial summary judgment and also ruled on our motion as to the prejudgment interest issue. The post-judgment interest, that issue came up. That's a new issue on appeal. The Mississippi Code 8557 issue, that's a new issue on appeal. None of that was before Judge Olserton when he ruled on the motion. None of that was before the court when it went to trial, on the trial of damages. So we've asked that that be waived. Well, but they also suggest that it was maybe properly raised after trial, but before appeal. I disagree with that, Your Honor. Under Rule 59, the motion to amend a judgment. And I disagree on that aspect. And I also disagree that on January the 6th, 2000— Was it in fact raised later as Mr. Feldman suggested that it was? After trial? After trial, yes, it was. One issue was raised. And I submit to the court, and we did in our briefs, that that's not the proper avenue to raise it, nor they had the time to raise it. And that's what I'm pointing to. The time to raise that was January the 6th, 2017. And that's when we filed our motion to preclude the prejudgment interest. I think it was ruled on a couple of weeks after that. That was a time that WACA and the appellate should have, at that time, submitted to the court, and every issue or every defense they had as to—or every argument they had that there shouldn't be a stipulation or there should be a trial as to the liability portion. But that wasn't the time. It didn't happen then. And it didn't happen until after the trial. So we've said in our briefs and over and over more than once that, in essence, they waived that. So they can't come to this court now and argue those issues that won before the district court. Does there need to be an act of Congress or whatever Mr. Feldman said before you pay the judgment? When you— I'm sorry. Does something have to happen legislatively within the government before you actually pay your part of the judgment? Ma'am, that question probably better come to Ms. Dempsey. Oh, I forgot. No, I have—we have no knowledge of that at all. Okay, that's right. There's no question. I thought you were Gulfport. But I can assure you that, you know, on behalf of Gulfport, we're readily available to pay. And you may address that to Ms. Dempsey. But I know in our conversation together in addressing this, there was no reason that there would be a delay in payment or that payment could not be made by the government. Can we go back to the next one? Okay. So, I mean, I can address other cases. All these cases basically, in a nutshell, say that these issues that they're arguing now were not before the court at the proper time. And it wasn't before the judge. So basically, they waited. That's what our issue is. In a nutshell, it was wait. All right. Thank you, Mr. — Any other questions? Thank you, Mr. Kemmel. Thank you. And you've had some time remaining. So, Ms. Dempsey, Judge Clement has a question for you, if you don't mind coming back up. It's about the payment. Mr. Feldman's contended that you need some sort of legislation or something before you actually honor the judgment. I'm not familiar with the ins and outs of all of those details, Your Honor. But whether they're collecting $1 or $10 million against the United States, they have sued the United States, and they will have to be paid by the United States through the judgment fund. I have personally been working at the Department of Justice for almost 15 years. I've never come across a case where someone was not paid because of a misappropriation or any problem like that. We submit our payments to the Treasury, and the Treasury makes the payments, in my experience. When you heard the allegation, were you surprised by the allegation? Here in court today or in the brief? Here in court. No, Your Honor. Again, they're going to — whether they collect $1 or $100 against the United States, they have to go through the process. OK. Thank you. Thank you. OK. Mr. Feldman, you've saved time for a vote. Thank you, Your Honors. Three points quickly on damages. First, in talking about the existence of a market, the error that the government's making is conflating a market for a Cessna 680, regardless of the seat configuration, with a market for a 10-seater Cessna. That's what this case is all about. What is it that your expert opined on as to a fair market value? Only the former. That there was a fair market value for a Cessna 680 Citation Sovereign, not that any market existed for those who are looking for 10 seats, because no market does exist. Paragraph 7 of the Wacob Declaration explains all the steps that Derek Wacob took to look for a pre-owned Cessna 10-seater, and there were none on the market. Cessna couldn't point him to any. Neither could a broker. Neither could his own efforts. This is precisely why there are two terms defined in Section 911 of the restatement, exchange value, which is what the government and our experts were all talking about, the open market value, and actual value. And what this court held in Kingfisher Marine was that actual value, the higher number, not the number the experts opined on as to fair market, but the higher number, because there is no market for that unique feature on the barge or the 10-seater Cessna, that's what you get as replacement cost. Second, the claim here that there's no evidence that there was no market is wrong. The evidence in this case is exactly like the evidence in all the cases we cite where replacement costs were awarded, as in DuPont, as in Kingfisher, as in Sawyer. The fact pattern is almost identical. Item has a unique value. It is lost. Owner goes on the market, cannot find it. That's the fact pattern in the President Madison way back in 1937. That's the evidence there's no market. Third, the fact that this is admiralty doesn't matter. This Court's case in 1984, Kingfisher, says that the admiralty test is the Section 911 restatement test. Footnote 1 of the denial of rehearing in Kingfisher says they're one and the same. So the President Madison test is the Section 911 test, and the Mississippi courts in Thomas v. Global Builders have adopted Section 928. The difference in the seating is one seat? Excuse me? The difference in the seating between the two aircraft is one seat? It's one or two seats, Your Honor, which I understand means rebalancing of the plan. It's not as simple as an after-manufacturer modification. And ultimately, we're not asking this Court to agree with our position that it's a legitimate commercial use, but to send that question to the finder of fact below. And the finder of fact didn't find, excuse me, on summary judgment, the finding wasn't that we provided insufficient evidence of that position. It was simply taken away from the jury. As to, quickly, the allocation, my friend from Millionaire purported to read into the stipulation from my client below. There was no stipulation that I'm aware of. This is a, and he referred to the motion for summary judgment on pre-judgment interest. When the defendants moved for partial summary judgment on pre-judgment interest, they did not ask for an allocation. In fact, if you look at the district court's opinion, one of the reasons they won that motion was the district court recognized that allocation remained hotly contested. That's in the district court's opinion on the partial summary judgment motion. »» Hotly contested between the two defendants? »» Excuse me? »» Hotly contested between the two defendants? »» Between plaintiff and the defendants, Your Honor. »» That's what he meant, are you sure? »» Excuse me? »» Are you sure that's what was meant? »» I don't know from memory. I'd have to go look back at the record. But it could possibly have been between all the parties. That's typically the setup in a case where a plaintiff sues two defendants. I see my time has expired. »» Yes. Thank you, Mr. Feldman. Your case is under submission. The Court will take a brief recess before hearing the final two cases.